IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

WILHELMINA ANDERSON,                )
                                    )
          Plaintiff,                )
                                    )
v.                                  )          Civil Action No. 1:05-0876
                                    )
FEDERAL BUREAU OF PRISONS,          )
                                    )
          Defendant.                )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are Defendant's Motion to Dismiss and/or Summary Judgment (Doc. No. 21.) and

Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. No. 23.) Having fully examined

the record in this case, the undersigned has determined that Defendant's Motions should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2005, Plaintiff, acting *pro se* and in confinement at FPC Alderson,

Alderson, West Virginia, filed a Complaint against the Federal Bureau of Prisons and an Application

to Proceed Without Prepayment of Fees.[1]  (Doc. Nos. 1 - 2.)  Plaintiff alleges as follows (Doc. No.

1.):

> On 9/24/01, I brought my medication with me to Alderson Federal Prison Camp and
> Dr. Vasquez threw it out because it was Oxycontin prescribed to me by my doctors
> at home. Dr. Vasquez replaced my prescribed pain medication with Naproxen 550
> mg. twice daily. On 4-17-02, Dr. Ray Jones sent instructions to Dr. Vasquez to stop
> giving me NSAIDS and it was on 9-26-02 that Dr. Vasquez noted that I was taking
> Indoin 50 mg. three times a day. Indoin is NSAIDS. On 6-30-03, PA Jim Harvey
> noted that I was taking NSAIDS or Ondoin 50 mg. three times a day. On 5-09-03,
> my hemoglobin was at 6.9 and I was never told or checked while it was so low. On

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held
to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

8-12-03, I tested positive for H. Pylori and none of the doctors or physical assistants ever followed up on the instructions on the lab report in reference to making sure that I was not still infected with H. Pylori. On 10-03-03, I was sent to Carswell, Texas, for my gallbladder surgery. On 1-04-04, my gallbladder was removed. I suffered from February 2002 until then and still up to this day I have stomach cramps due to the deliberate indifference that the doctors and physical assistants had about giving me NSAIDS. Instead of giving me Naproxen, they gave me Indoin which caused me to have ulcers, diverticula infections and perforations of the bowels. Up until this day, I have to take medication to go to the restroom and I will be like this for the rest of my life. I also have gastroesophageal reflux with lower esophageal irritability and spasm plus H. Pylori for the rest of my life.

  I was told by Dr. Mendez that H. Pylori comes from water. I looked it up and it comes from NSAIDS that gave me the ulcers. FPC Alderson doctors and PA deliberately ignored my serious medical needs from February 2002 until October 2003 when I was sent to Carswell, Texas, to get my gallbladder removed. The doctors and PA showed deliberate indifference to my serious medical needs along with violating my Eighth Amendment rights. Dr. Ray Jones was ready to do my surgery, but none of his instructions were followed by the staff here at FPC Alderson. This caused me to have permanent stomach problems. The Region received my claim on August 10, 2002 and it took them a year to reply. I have permanent damage and 60004 of the B.O.P. states that an inmate in federal prison is entitled to the same medical care that is offered to the community.

Plaintiff indicates that she presented her claim administratively and was offered $3,000. Plaintiff seeks compensatory and punitive damages.

  On April 13, 2006, the undersigned entered an Order returning Plaintiff's Application to Proceed Without Prepayment of Fees as deficient. (Doc. No. 5.) The undersigned also construed Plaintiff's Complaint as stating an Eighth Amendment claim of deliberate indifference to her serious medical needs cognizable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The undersigned further noted that Plaintiff may also have intended to proceed pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq., seeking damages for negligence in attending to her medical needs.

  On May 4, 2006, Plaintiff filed a further Application to Proceed Without Prepayment of Fees. (Doc. No. 6.)  By Order filed on May 10, 2006, Plaintiff's Motion to Proceed Without

Prepayment of Fees was granted and a summons was subsequently issued to the named Defendant. (Doc. Nos. 7 - 8.)

On July 11, 2006, Defendant filed its Answer to Plaintiff's Complaint. (Doc. No. 13.) Among other things, Defendant "admits that Plaintiff tested positive for H. Pylori . . . on August 12, 2003." (Id., ¶ 7.) Defendant asserts the following affirmative defenses, among others: (1) Plaintiff has failed to assert a claim for which relief can be granted; (2) Plaintiff is not entitled to punitive damages under the FTCA; (3) Plaintiff's damages sought exceed the $250,000 (plus interest) statutory cap imposed by West Virginia Code § 55-7B-8(a); (4) Plaintiff's damages are limited to those set forth in her administrative claims pursuant to 28 U.S.C. § 2675(b); (5) the BOP is an improper party pursuant to the FTCA and should be dismissed; and (6) Plaintiff has failed to comply with the pre-filing requirements found in the West Virginia Medical Professional Liability Act, which include advance notice of her claim and supporting the claim with expert testimony through the filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c).[2]

On September 5, 2006, Plaintiff filed a response to Defendant's Answer. (Doc. No. 15.) Plaintiff denies that her claims were filed untimely and indicates, by referring to 42 U.S.C. § 1983, that she intended to raise in her Complaint a claim pursuant to <u>Bivens</u> for violations of her constitutional rights under the Eighth Amendment of the United States Constitution for deliberate

---

[2] The undersigned notes that Defendant did not state failure to exhaust administrative remedies as an affirmative defense. Rather, Defendant contends in a footnote that "this case is brought solely under the Federal Tort Claims Act ("FTCA") and not under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), despite the Court's indication otherwise in its May 10, 2006 Order." (Doc. No. 13 at p. 1, fn.1.) In support of its position, Defendant contends that Plaintiff failed to name any individual defendants. Defendant also contends that Plaintiff has failed to exhaust her administrative remedies as required under the Prison Litigation Reform Act for purposes of a <u>Bivens</u> claim and that such claim is barred by the applicable statute of limitation.

indifference to her serious medical needs.  In support of her claims, Plaintiff also attaches portions

of her medical records and documentation regarding the denial of her administrative tort claim, No.

TRT-MXR-2003-04655, which involved her claim "for personal injury resulting from bacteria from

H Ploria from the water at FPC Alderson and multiple ulcers from naproxen." (Id. at 6.)

On January 31, 2007, Defendant filed a Motion to Dismiss and/or Summary Judgment and

Memorandum of Law. (Doc. Nos. 21 - 22.) Defendant attaches the Declaration of Sharon Wahl,

Legal Instruments Examiner for the Consolidated Legal Center at F.C.I. Beckley, the Declaration

of Samuel Adams, Safety Manager at FPC Alderson, and the Declaration of Dominick McLain,

D.O., Clinical Director at FCI Beckley, to its Memorandum in Support. (Doc. No. 22.) Defendant

raises the following issues in seeking dismissal and/or summary judgment:

1.　　To the extent that the Complaint is construed as one arising under *Bivens*, it is time barred.
2.　　To the extent that this action is construed as one arising pursuant to *Bivens*, it fails to state a claim because there is no *Bivens* remedy against the United States.
3.　　Plaintiff's claims set forth in Claim No. TRT-MXR-2003-04016 are time barred as suit was not filed within six months of denial.
4.　　Plaintiff's damages for medical negligence are limited by W.Va.Code § 55-7B-8.
5.　　The United States has not waived its sovereign immunity for punitive damages.
6.　　The Plaintiff's claim of improper drinking water fails to state a claim upon which relief can be granted.

With respect to the first issue, Defendant states in its Memorandum in Support that before

Plaintiff filed her Complaint initiating this matters, she filed two administrative tort claims – the first

dated August 2 and received on August 6, 2003, and the second dated September 17 and received

on September 23, 2003. Defendant states that the first was denied by letter dated January 8, 2004,

and the second was denied by letter dated June 21, 2005.[3] Defendant contends that Plaintiff's <u>Bivens</u> claim accrued no later than September 23, 2003, and the applicable two-year statute of limitations ran before November 5, 2005, when Plaintiff filed her Complaint in this case. With respect to the second issue, Defendant states that it is not a proper party in a <u>Bivens</u> action. Respecting the third issue, Defendant asserts that the claims which Plaintiff raised in her administrative tort claim TRT-MXR-2003-04016 are barred because Plaintiff did not file suit within six months after January 8, 2004, when her claims were denied. Defendant asserts further that to the extent that Plaintiff raised the same claims in TRT-MXR-2003-04016 as she did in TRT-MXR-2003-04655, "[f]iling consecutive administrative claims asserting some or all of the same claims does not stop the statute of limitations from running on those claims that are denied. To find otherwise would violate the plain language of the statute of limitations found in § 2401(b) and render it meaningless." Defendant states further that "Plaintiff was advised that if she was not satisfied with the denial of her claim she

―――――――――――――――

[3] Ms. Wahl states as follows in her Declaration (references to exhibits omitted) :

5.  On August 6, 2003, inmate Anderson filed an administrative tort claim with the Federal Bureau of Prisons, TRT-MXR-2003-04016, seeking $175,000 in damages for wrongful death resulting from improper medical treatment at FPC Alderson.

6.  By letter dated January 8, 2004, inmate Anderson's tort claim was denied.

7.  On October 7, 2003, inmate Anderson filed a second administrative tort claim with the federal bureau of prisons, TRT-MXR-2003-04655, seeking $1,000,000 in damages for personal injury resulting from improper medical care at FPC Alderson. Inmate Anderson alleged that she contacted Helicobacter pylori (H. Pylori) from the water at FPC Alderson and that medical staff prescribed her naproxen, which caused multiple ulcers.

8.  By letter dated June 21, 2005, inmate Anderson was offered a settlement, which was denied, resulting in the effective denial of her claim.

A copy of Plaintiff's administrative tort claims and the BOP's responses is attached to Ms. Wahl's Declaration.

5

must file suit within six months. She failed to act and now the claims presented in No. TRT-MXR-2003-04655 are time barred and may not be heard in this action. Only the impure drinking water claim which is made in the second administrative claim would not be time barred because it was not part of the first tort claim." Respecting the fourth and fifth issues, Defendant contends that Plaintiff's damages are limited to those specified in  W.Va.Code § 55-7B-8 and she is not entitled to punitive damages under the FTCA. Finally respecting the sixth issue, Defendant states that Plaintiff has no evidence which indicates that she contracted H. Pylori through the drinking water at FPC Alderson and in any event the town of Alderson supplies the drinking water to the facility, and Defendant has no responsibility for it. Defendant also filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and a Memorandum in Support on January 31, 2007. (Doc. Nos. 23 - 24.) Defendant contends that Plaintiff's claim of impure drinking water should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because the drinking water at FPC Alderson is supplied by the town of Alderson, an independent contractor for whom the United States is not responsible in tort.

By Order filed on May 10, 2007,  Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising her of her right to file a response to the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.  (Doc. No. 25.) On May 18, 2007, Plaintiff filed a motion for an extension of time to respond to Defendant's Motions. (Doc. Nos. 27.)  By Order filed on June 4, 2007, Plaintiff's  motion for extension of time was granted, and Plaintiff was directed to file her response to Defendant's Motions by July 6, 2007.  (Doc. No. 28.)

On June 11, 2007, Plaintiff filed her response to Defendant's Motion to Dismiss. (Doc. No. 29.) Plaintiff contends that her <u>Bivens</u> claim was filed timely because she was still in the process of exhausting her administrative remedies. Plaintiff asserts she filed the instant Complaint on November 3, 2005, about four and a half months after the June 21, 2005, denial of her administrative tort claim. (<u>Id.</u> at 29.) Plaintiff further contends that despite Defendant's assertion that her administrative tort claims essentially raised the same issues and therefore are untimely filed, her first administrative tort claim did not claim that her gallbladder surgery was unnecessarily delayed, nor did she claim that as a result of medical negligence of the United States she suffered from diverticuli infection or perforation of the bowels. Plaintiff also contends that the United States has waived its sovereign immunity for suits against prison officials. (<u>Id.</u> at 5.) Plaintiff further asserts that as a matter of law the United States is responsible for its contractors because it employs them. (<u>Id.</u> at 11.)

On July 6, 2007, Plaintiff filed a further response to Defendant's Motions to Dismiss, styled "Af[f]idavit and Memorandum of Law and Facts to Support My Claim." (Doc. No. 30.) Although the undersigned has difficulty in comprehending Plaintiff's arguments, Plaintiff appears to contend that her FTCA claim is filed timely because the Federal Bureau of Prisons failed to deny her second administrative tort claim, No. TRT-MXR-2003-04655, within six months of her filing the claim pursuant to 28 U.S.C. § 2675(a). (<u>Id.</u> at 2.) With respect to her claim for impure drinking water, Plaintiff contends that her claim involves the water supply at FPC Alderson in 2003, prior to the installation of a new water tower. (<u>Id.</u> at 4.) Plaintiff further contends that the contractor at the time did not perform his duties, leaving inmates to put chlorine in the water. (<u>Id.</u>) Plaintiff also contends that the Federal Bureau of Prisons should be responsible for her care because she is under its custody and control. (<u>Id.</u>) Lastly, Plaintiff states that she filed her claim "under 42 U.S.C. 1983, and not a

tort claim, due to the fact that the United States denied her tort claim." (Id. at 4.)

## THE STANDARD

### Rule 12(b)(6) Dismissal

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 - 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to the Plaintiff, and must take them as true. See Jenkins v. McKeithen, 395 U.S. 411, 421 - 422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). "Because a dismissal under Rule 12(b)(6) is accorded *res judicata* effect, such dismissals are generally disfavored by the courts." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991). When faced with such a Motion, the Court is limited to a consideration of whether plaintiff's allegations, standing alone and taken as true, pleaded jurisdiction and a meritorious cause of action. Id. at 1473. A *pro se* Complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322 - 23, 106 S.Ct. at 2552 - 53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

### A.      Exhaustion of Administrative Remedies/Limitations of Actions.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4]  Woodford v. Ngo, 548 U.S. __, 126 S.Ct. 2378, 2382 - 2383, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.") "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.) If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, ___ S.Ct. ___, 2007 WL 135890, Court's Syllabus (c)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.")

Several administrative procedures are available to federal inmates depending upon the circumstances which cause them to have grievances. The Bureau of Prisons' Administrative Remedy Program, 28 C.F.R. §§ 542.10 - 19, is a process "through which inmates may seek formal review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. The Administrative Remedy Program is not all-encompassing however. 28 C.F.R. § 542.12 (b) provides as follows:

> Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation Claims, and Freedom of Information or Privacy Act requests. Staff shall inform the inmate in writing of the appropriate administrative procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.

Depending upon at what level an inmate initiates it, the Bureau of Prison's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.10. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Section 542.12(b) provides as follows:

> Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims . . . . Staff shall inform the inmate in writing of the appropriate administrative procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.

Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id.,

11

§ 542.14(d). The Warden of the institution and the Regional Director must respond to the inmates Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10.  If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete.

The Federal Tort Claims Act on the other hand is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. *See* 28 U.S.C. § 2675(a)[5]. *See also* Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (*citing* Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986), Muth v. United States, 1 F.3d 246 (4th Cir. 1993). Thus, before an inmate can bring a claim under the Federal Tort Claims Act, the

---

[5] 28 U.S.C. § 2675(a) provides that

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11[6] and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the Federal Tort Claims Act is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

Circuit Courts have invariably held that due to the similarity of Bivens and § 1983 cases, the Supreme Court's decision in Wilson v. Garcia, 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that the statutes of limitations for § 1983 actions are borrowed from State law should be extended to Bivens cases. See Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996). The Wilson Court determined that the proper limitations period for a Section 1983 action is the limitations period for personal injury actions in the State where the Section 1983 claim arises. West Virginia applies a

---

[6] 28 C.F.R. § 14.2(a) provides that

a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . for personal injury . . . alleged to have occurred by reason of the incident[.]

two-year statute of limitations to personal injury claims. *See* W. Va. Code § 55-2-12(b). This two-year statute of limitations is applicable in this case. Federal law prescribes when a cause of action accrues under Bivens. Generally, a claim accrues when a plaintiff knows or has reason to know of the injury which gives rise to the cause of action. *See* Leavell v. Kieffer, 189 F.3d 492, 495 (7th Cir. 1999).         Federal Courts also apply the forum State's law regarding tolling, including equitable tolling, when not inconsistent with federal law. Hardin v. Straub, 490 U.S. 536, 537 - 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989.) In Irwin v. Dep't of Veteran's Affairs, 498 U.S. 89, 97, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990), the United States Supreme Court recognized that statutes of limitations in actions against the government are subject to a rebuttable presumption of equitable tolling. The Irwin Court stated that equitable tolling should apply in cases "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Id. Federal Courts have held that because the Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while she exhausts the remedies. *See* Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Brown v. Morgan, 209 F.3d 595 (6th Cir. 2000); Howard v. Mendez, 304 F.Supp.2d 632, 638 (M.D.Pa. 2004)(a Bivens case); Aguirre-Castillo v. United States, 2004 WL 594105 (N.D.Tex.)(a Bivens/FTCA case); Lopez v. S.C.D.C., 2007 WL 2021875 (D.S.C.) at *2.[7]

---

[7] The undersigned notes that, intending to alleviate the harsh application of *W.Va.Code* § 55-2-12, the West Virginia Legislature enacted *W.Va.Code* § 55-2-18 providing that the *W.Va.Code* § 55-2-12 two-year limitation period is extended for one year when an action has been involuntarily dismissed without a determination of the merits and when a judgment was reversed on grounds not precluding the filing of a new action. The undersigned finds this some indication in West Virginia statutory law that the initiation of proceedings which do not culminate in a final determination on the merits will effectively extend or toll the limitations period for filing suit by one year.

1.    <u>**Plaintiff's Bivens Claim.**</u>

Defendant does not argue that Plaintiff's <u>Bivens</u> claim should be dismissed because she failed to exhaust administrative remedies. Rather, Defendant asserts that her <u>Bivens</u> claim should be dismissed as barred by the applicable two-year statute of limitations. The undersigned disagrees. Plaintiff filed a "Claim for Damage, Injury, or Death" form on August 6, 2003, complaining of "(1) improper diagnosis . . ., (2) gave me medication for over a year that I was not supposed to take, (3) gave me Naproxen that gave me ulcers, (4) as of this day I have not had surgery which put my health at great risk . . .." She indicated that she was seeking wrongful death damages for "slow wrongful death." Ms. Wahl's Declaration, Exhibit 1. The BOP did not respond to Plaintiff's complaints at all. Rather, instead of reading Plaintiff's indication that she was seeking wrongful death damages as an indication that she regarded her circumstances as grim and treating her claim as one for personal injuries, the BOP treated Plaintiff's claim as a wrongful death claim and denied it because "in order to recover for wrongful death in West Virginia there must first be a death." *Id.*, Exhibit 2. The undersigned finds the BOP's response to Plaintiff's first administrative tort claim irresponsible and as good as no response at all. As a practical matter, relief upon Plaintiff's complaints as she first made them through the administrative process was unavailable to her. Plaintiff filed a second "Claim for Damage, Injury, or Death" form on September 23, 2003, complaining that for a year she had been experiencing pain in her stomach when she ate; she caught H. Pylori from the drinking water; she began having gallbladder problems when she arrived at Alderson; and a doctor prescribed Naproxen which gave her ulcers. Plaintiff stated as the nature and extent of her injury "slow wrongful death, infection of bacteria from H. Pylori from the water at Alderson and multiple ulcers from Naproxen." She indicated that she was seeking damages for personal injury and wrongful

death. *Id.*, Exhibit 3. Over a year and eight months later, the BOP responded "to a second tort claim that you have pending with the Federal Bureau of Prisons." *Id.*, Doc. No. 4. The BOP stated that "[t]here is no evidence to support your claim that you contacted any disorder from the water at FPC Alderson or that you suffered any long term effects from your placement on Naproxen. However, investigation reveals settlement in the amount of $3,000.00 appears to be appropriate." One or both of Plaintiff's administrative tort claims were pending during the period from August 6, 2003, through June 21, 2005. The applicable two-year statute of limitations was equitably tolled while Plaintiff was exhausting administrative remedies and had not run when Plaintiff filed her Complaint in this matter on November 30, 2005. Defendant's Motion to Dismiss and/or Summary Judgment with respect to Plaintiff's <u>Bivens</u> claim should be denied. The undersigned agree with Defendant's assertion that it is not a proper party in a <u>Bivens</u> suit. Plaintiff should be given the opportunity to amend her Complaint to name individuals whom she believes are liable under <u>Bivens</u>.

**2.      Plaintiff's Federal Tort Claim.**

Plaintiff's Complaint was filed within six months after the BOP's June 21, 2005, denial of her second administrative tort claim. Plaintiff should be entitled to proceed in this matter under the FTCA upon all claims which she raises. Defendant's Motion to Dismiss and/or Summary Judgment seeking to limit Plaintiff in her claims should be denied, and the United States should be named as a party as is appropriate under the FTCA.

**B.      Limitations upon Plaintiff's Entitlement to Damages Under <u>W.Va.Code</u> § 55-7B-8 and the FTCA.**

<u>W.Va.Code</u> § 55-7B-8 establishes limits on liability for non-economic loss in professional liability actions brought against health care providers. This is a <u>Bivens</u> and an FTCA case. While <u>W.Va.Code</u> § 55-7B-8 may apply to Plaintiff's FTCA claim, it has no application to her <u>Bivens</u>

16

claim. The undersigned finds that it is premature to consider the applicability W.Va.Code § 55-7B-8.

28 U.S.C. § 2674 provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." If Plaintiff succeeds upon her FTCA claim she will therefore not be entitled to punitive damages. Defendant's Motion to Dismiss and/or Summary Judgment should be denied with respect to the applicability of W.Va.Code § 55-7B-8 and granted with respect to Plaintiff's entitlement to punitive damages upon her FTCA claim.

**C.      Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

Plaintiff alleged in her second administrative tort claim that she got H. pylori from the drinking water at Alderson. Plaintiff states in her Complaint that "[o]n 8-12-03, I tested positive for H. Pylori and none of the doctors or physical assistants ever followed up on the instructions on the lab report in reference to making sure that I was not still infected with H. Pylori." She states further that Dr. Mendez told her that H. Pylori comes from water. Reading Plaintiff's Complaint liberally as the Court must, the undersigned finds that Plaintiff is alleging that she got H. pylori from the drinking water at Alderson and Defendant failed to treat her for it.

By its Motion to Dismiss, Defendant addresses only Plaintiff's assertion that she got H. pylori from the drinking water at Alderson. Defendant asserts that there is no scientific evidence that connects the drinking water at FPC Alderson or anyplace else with the Plaintiff's contracting of H. pylori bacteria. Defendant asserts that Plaintiff testified that she was unsure of how she contracted

H. pylori.[8] Defendant further asserts that Plaintiff's claim of impure drinking water should be dismissed because the drinking water at FPC Alderson is supplied by an independent contractor, the Town of Alderson, for whom the United States is not responsible in tort. In support of its position, Defendant submits the Declaration of Dominick McLain, D.O., Clinical Director of FCI Beckley. Dr. McLain states that "it is generally unknown how individuals contract H. Pylori. It is highly improbable, however, that an individual would contract H. Pylori from a public drinking water supply." Defendant also refers to a publication from the National Digestive Diseases Information Clearinghouse (NDDIC) entitled "H. Pylori and Peptic Ulcer" which states as follows contradicting Dr. McLain's statement that it is unlikely that one might get H. pylori from water:

> H. pylori infection is common in the United States: about 20 percent of people under 40 years old and half of those over 60 years have it. Most infected people, however, do not develop ulcers. Why h. pylori does not cause ulcers in every infected person is not known. Most likely, infection depends on characteristics of the infected person, the type of h. pylori and other factors yet to be considered.
>
> Researchers are not certain how people contract h. pylori, but they think it may be through food or water.
>
> Researchers have found h. pylori in the saliva of some infected people, so the bacteria may also spread through mouth to mouth contact such as kissing.

---

[8] Plaintiff testified as follows:

That H pylori, it totally messed up my head. I'm totally serious about that thing. I don't know what it is. The bacteria infection, where did it come from? I read that it came from non-steriodal medication. And then some people it comes from the wataer and all of us should have it then. We all should drink the same water. I don't know. I wrote the bacteria infection that I had twice, to my knowledge, one in '05 and one back here, I think it was '02. I looked up the H pylori, but I needed more medical - at least my computer said, when I looked it up, it came from medication. I don't know.

(Doc. No. 21, Deposition of Wilhelmina Anderson, p. 70:12-24.)

(Doc. No. 21, Part 2 at 13.) Defendant also submits the Declaration of Samuel Adams, Safety

Manager at FPC Alderson. Mr. Adams states as follows:

2.      The water supply at FPC Alderson is provided by the municipal system for
        the Town of Alderson, West Virginia. This is the same water supply to the
        residents of the Town of Alderson.

3.      No FPC Alderson staff member or department has any control over the water
        supply or its testing and maintenance. However, I do have knowledge of their
        testing procedures, which are made known to me in the course of my
        employment.

4.      The water supply is subject to state standards and is tested on a daily basis
        for proper chlorine levels throughout the town of Alderson, which includes
        FPC Alderson.

5.      The Town of Alderson submits to all residents and users of the water system
        on an annual basis water testing procedures and protocols that are provided
        by the town.

6.      The Safety Department at FPC Alderson is audited on annual basis with
        regard to the Clean Water Act requirements.

7.      FPC Alderson has received no violations based upon these audits since I have
        been employed as Safety Manager.

In answering Plaintiff's Complaint, Defendant admits that Plaintiff tested positive for H.

pylori on August 12, 2003. A medical record of FMC Carswell dated November 12, 2003, which

Plaintiff has submitted indicates "H. Pylori – treated." (Doc. No. 15, p. 19.) It is therefore evident

that Plaintiff was infected with H. pylori while she was incarcerated at Alderson. Defendant has

submitted no evidence proving that Plaintiff did not become infected with H. pylori through the

prison's drinking water. Dr. McLain's opinion that "It is highly improbable . . . that an individual

would contract H. Pylori from a public drinking water supply." is contradicted by the NDDIC's

statement that "[r]esearchers are not certain how people contract h. pylori, but they think it may be

through food or water." Mr. Adams does not indicate that the testing and processing of the prison's

water supply is aimed at detecting and eliminating H. pylori. In any event, Defendant does not

address the second part of Plaintiff's claim – that the BOP failed to follow up and treat her after it

was determined that she was infected with the bacteria. For these reasons, Defendant's Motion to Dismiss Plaintiff's claim respecting the drinking water at Alderson should be denied.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal analysis and **RECOMMENDED** that the District Court, **GRANT** Defendant's  Motions to Dismiss and/or Summary Judgment (Doc. No. 21.) to the extent that Defendant claims that Plaintiff is not entitled to punitive damages upon her FTCA claim and otherwise **DENY** it, **DENY** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 23), and remand this matter back to the undersigned for further proceedings including the allowance of the substitution of the United States as a Defendant in place of the Federal Bureau of Prisons and a period of time for Plaintiff to amend her Complaint to name individuals whom she believes are liable in conjunction with her <u>Bivens</u> claim. The undersigned will also consider appointing counsel to represent Plaintiff in this matter.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and mail a copy to Plaintiff, who is acting *pro se*, and counsel of record.

Date: August 3, 2007.

R. Clarke VanDervort
United States Magistrate Judge